STATE v. HEZZIE ROBBINS.

(Filed 21 September, 1960.)

**1. Criminal Law § 16—**

G.S. 7-393 giving county courts exclusive original jurisdiction of misdemeanors has been modified by G.S. 7-64 so as to give the Superior Court concurrent jurisdiction of misdemeanors except in those counties excluded from the provisions of G.S. 7-64, and therefore where a county court coming within G.S. 7-64 binds a defendant over on a misdemeanor charge, defendant's motion in the Superior Court to remand to the county court is correctly denied.

**2. Anonymous Communications Containing Threats or Obscenity—**

In order to sustain a conviction under G.S. 14-394 there must be a transmission by defendant of an anonymous communication which contains at least one of the categories of language prohibited by the statute, and there can be no transmission without an intended recipient and a delivery of the prohibited writing or a communication of its contents to the intended recipient.

**3. Same—**

A bill of indictment under G.S. 14-394, which fails to name the person to whom defendant transmitted the writing and the kind or character of the language contained therein, is fatally defective, and motion to quash should be allowed.

APPEAL by defendant from *McLean, J.,* January 1960 Term, of Mc-DOWELL.

On the affidavit of W. C. Wilson that defendant did "unlawfully, willfully, and feloniously write and transmit certain letters using vulgar and obscene language and without signing his true name thereto in violation of G.S. 14-394. . ." the Clerk of McDowell County Criminal Court issued an order for the arrest of defendant. Defendant appeared in the County Criminal Court and was "bound over to January, 1960 Term, of McDowell County Superior Court for trial."

At the January 1960 Term of McDowell Superior Court the grand jury returned a true bill of indictment charging that defendant on 1 September 1959 "did unlawfully and willfully write and transmit certain letters using vulgar and obscene language without signing his true name thereto in violation of G.S. 14-394 against the form of the statute in such case made and provided and against the peace and dignity af the State." When the case was called for trial in the Superior Court, defendant moved to remand to McDowell County Criminal Court for that the Superior Court had no jurisdiction. This motion was overruled. Defendant then moved to quash the bill.

This motion was likewise overruled. The jury returned a verdict of guilty. Prison sentence was imposed and defendant appealed.

*Attorney General Bruton and Assistant Attorney General Hooper for the State.*

*Everette C. Carnes for defendant, appellant.*

RODMAN, J. McDowell County Criminal Court was created pursuant to the provisions of art. 36, c. 7 of the General Statutes. The exclusive original jurisdiction given criminal county courts by G.S. 7-393 must now be considered as modified by G.S. 7-64 except as to those counties excluded from its provisions. McDowell County is not one of the excluded counties. Hence by express statutory language the County Criminal Court and the Superior Court of McDowell County have concurrent jurisdiction of misdemeanors, which jurisdiction may be exercised by the court first taking cognizance of the charge. Here McDowell County Criminal Court refused to take cognizance of the charge, that is, to exercise its jurisdiction to hear and determine defendant's guilt, but expressly directed the determination of that question by the Superior Court of McDowell County. Since the Superior Court had taken cognizance of the case, the court correctly declined to allow defendant's motion to remand. *S. v. Shemwell*, 180 N.C. 718, 104 S.E. 885.

The statute, G.S. 14-394, which defendant is charged with violating, declares: "It shall be unlawful for any person. . .to write and transmit any letter, note, or writing. . .without signing his. . .true name thereto, threatening any person. . .with any personal injury or violence or destruction of property of such individuals. . .or using therein any language or threats of any kind or nature calculated to intimidate or place in fear any such persons. . .as to their personal safety or the safety of their property, or using vulgar or obscene language, or using such language which if published would bring such persons into public contempt and disgrace. . ."

For a conviction under this statute it must be alleged and established that defendant (1) wrote and transmitted to some person an anonymous letter (2) containing (a) threats to person or property, or (b) vulgar or obscene language, or (c) language which if published would bring such person into public contempt and disgrace.

Clearly there must be a transmission of the anonymous letter which contains at least one of the categories of prohibited language. Unless and until there is a transmission, no crime has been committed. What then does the word "transmit," as used in the statute, mean? One of

the dictionary definitions is: "to send or transfer from one person or place to another." Webster's New Int. Dic.

The Supreme Court of South Carolina said: "To transmit is to communicate; to send from one person to another." *Kirby v. Western Union Telegraph Co.,* 58 S.E. 10. That definition met with approval in *Askew v. Telegraph Co.,* 174 N.C. 261, 93 S.E. 773.

There can be no transmission within the meaning of the statute without an intended recipient and a delivery of the prohibited writing or a communication of its contents to the intended recipient. This is emphasized by the words "such person" in the last quoted clause of the statute.

Was it necessary to allege in the bill the name of the person to whom defendant transmitted the letter and the kind and character of vulgar and obscene language used? Although the statute under which defendant was indicted was not enacted until 1921, it is based on and is an enlargement of 27 Geo. II. c. 15, which declared it a crime punishable by death for any person after 1 May 1754 to "knowingly send any letter without any Name subscribed thereto, or signed with a ficticious Name or Names, Letter or Letters, threatening to kill or murder any of his Majesty's Subject or Subjects, or to burn their Houses, Out-houses, Barns, Stacks of Corn or Grain, Hay or Straw, though no Money or Venison, or other valuable Thing shall be demanded in or by such Letter or Letters. . ."

Our own earlier kindred statute (sec. 110, c. 34, Rev. Code of 1854) made it a crime to knowingly send or deliver any letter containing threats.

We find no prior decision by this Court fixing the averments necessary for a bill adequate to sustain a conviction under the statute, but we think English decisions interpreting the English Act, decisions of appellate courts of sister States having related statutes, and our own decisions declaring the general rule for determining the sufficiency of a bill of indictment furnish a definite answer to the question propounded.

The opinion in *Rex v. Richard Paddle,* decided in 1822, reported 168 Eng. Rep. 910, is correctly summarized in the headnote as follows: "Sending a threatening letter within 27 Geo. II. c. 15. To bring the offense within this statute, the letter must be sent to the person threatened, and it must be so stated in the indictment. But it seems that sending the letter to A. in order that he may deliver it to B., is a sending to B. if the letter be delivered by A. to B." Like conconclusions were reached by the Supreme Court of Indiana in *Kessler v. State,* 50 Ind. 229, decided 1875, and by the Court of Criminal

Appeals of Texas in *Goulding v. State,* 70 S.W. 2d 200, decided 1934, where the indictments failed to allege that the communication was made to the person threatened.

The foregoing decisions dealing specifically with the transmission of anonymous communications accord with our pronouncements of the essentials of a valid bill of indictment. *S. v. Bissette,* 250 N.C. 514, 108 S.E. 2d 858; *S. v. Walker,* 249 N.C. 35, 105 S.E. 2d 101; *S. v. Cox,* 244 N.C. 57, 92 S.E. 2d 413; *S. v. Harvey,* 242 N.C. 111, 86 S.E. 2d 793; *S. v. Eason,* 242 N.C. 59, 86 S.E. 2d 774; *S. v. Scott,* 237 N.C. 432, 75 S.E. 2d 154; *S. v. Porter,* 101 N.C. 713; *S. v. Russell,* 91 N.C. 624.

The motion to quash should have been allowed. The bill was insufficient to charge a criminal offense. This conclusion will, of course, not prevent the solicitor from sending a bill adequately charging the transmission to a designated person of letters containing language prohibited by the statute with such particularization of the language so used as may be proper.

Reversed.